IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GARDNER; STEVE MATTERN; and WILLIAM SULLIVAN, individually and on behalf of all similarly situated current and former employees, | No. C 09-05876 CW<br><br>ORDER DENYING DEFENDANTS' MOTION TO DENY PLAINTIFF CLASS CERTIFICATION AND GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (Docket Nos. 57 & 59) |
|        Plaintiffs, | |
|    v. | |
| SHELL OIL COMPANY; SHELL OIL PRODUCTS COMPANY, LLC; and EQUILON ENTERPRISES LLC dba SHELL OIL PRODUCTS US; and DOES 1 through 20, inclusive, | |
|        Defendants. | |

Defendants Shell Oil Company, Shell Oil Products Company LLC, and Equilon Enterprises LLC dba Shell Oil Products US (collectively Defendants) move to deny class certification.[1] Docket No. 57. On the same day Defendants filed their motion, Plaintiffs moved to certify a class and subclass. On January 27, 2011, the Court held a hearing on the motions. Having considered all of the parties' papers and oral argument, the Court DENIES Defendants' motion and GRANTS Plaintiffs' motion. (Docket Nos. 57 & 59).

---

[1] Shell Oil Company (SOC) is a subsidiary of Royal Dutch Shell plc, a multinational oil company, and it wholly owns Shell Oil Products Company LLC (SOPC), which is a minor, indirect owner of Equilon Enterprises LLC dba Shell Oil Products US (SOPUS).

BACKGROUND

This action concerns whether Defendants' refinery-wide policies and practices deprive Plaintiffs of their state law rights to thirty-minute meal periods relieved of all duties, or an extra hour of pay in lieu thereof.  Plaintiffs seek monetary, injunctive and declaratory relief.

Defendants have operated the Martinez, California refinery at issue in this case since at least April, 2004.  The "shift employees" who comprise the putative class are known as Operators. Operators are paid hourly, work rotating twelve-hour shifts, and are required by refinery policies to remain in communication at all times, and to remain on the premises.  They must refrain from sleeping, reading non-work related materials, using headphones, and using the internet for personal purposes for more than fifteen minutes per shift.  There are no set times for meal breaks. Operators work as Board Operators and Outside Operators and are assigned to one of six departments: Operations Central, Delayed Coker, Distillation and Hydroprocessing, Cracked Products, Utilities, and Logistics.  Board Operators work at a console in a control center, tracking on various screens how a particular unit is running.  Outside Operators work outside of the control centers, and are responsible for maintaining, monitoring and inspecting equipment, as well as responding to directions from Board Operators.  In contrast to Operators, employees on a "day schedule" generally work between eight and ten hours per day, and

United States District Court
For the Northern District of California

receive an unpaid thirty-minute meal period free from any work responsibilities.  Communication between and among Board and Outside Operators is required to run the Martinez refinery properly.

Operators at the refinery are governed by one collective bargaining agreement (CBA).  There is no written provision in the CBA or elsewhere indicating that Operators have consented to waive their rights to a thirty-minute meal period.  The CBA states, "Whenever operations are continuous, each employee engaged in such work shall remain on duty until relieved."  2009 CBA, Exh. 6, p. 4.  The CBA, which has been in effect since at least April, 2004, covers all putative class members.

Prior to the initiation of this litigation, the Operators' union filed a class action against SOC, SOPUS and Tesoro Refining and Marketing Company (Tesoro) in the Central District of California, United Steel Workers, et al. v. Shell Oil Co., et al. (USW Case), 08-cv-03693 RGK.  That complaint alleged meal period violations and other claims on behalf of a proposed state-wide class of current and former employees who worked at three separate refineries operated by SOC, SOPUS and Tesoro.  The three refineries included the Martinez refinery that is the focus of this case, a Los Angeles area refinery, and a Tesoro refinery and chemical plant also located in Martinez.  On August 21, 2009, the judge in the USW case denied class certification, in part because the proposed classes included employees from multiple refineries

owned by different companies and governed by different collective bargaining agreements. After class certification was denied, Plaintiffs in the USW case shifted course. On July 7, 2010, two other putative class actions were filed, alleging meal period violations and other claims on behalf of shift employees of Shell and Tesoro at the Los Angeles area refinery. Thus, the original USW case has evolved into four separate cases, each covering the employees of one employer at one refinery.

In the present action, Plaintiffs bring claims under California's Unfair Competition Law (UCL), Business & Professions Code § 17200 et seq., and California Labor Code §§ 512 and 226.7 and Industrial Welfare Commission (IWC) Wage Order 1-2001 § 11 for failure to provide meal breaks. Plaintiffs move to certify the following class:

> All current and former shift employees of Defendants
> Shell Oil Company, Shell Oil Products Company LLC,
> and/or Equilon Enterprises LLC dba Shell Oil Products
> US who worked at least one 12-hour shift, excluding
> any shifts worked as temporary shift supervisors,
> since April 25, 2004, at the Martinez refinery
> operated by one or more of the Defendants.[2]

Plaintiffs also move to certify a subclass of former employees suing for failure to pay all wages due at the time of

---

[2] The proposed class and subclass definitions provided here reflect the modified definitions set forth in Plaintiffs' reply brief in support of their motion for class certification. Defendants' opposition questioned the presence of temporary shift workers in the proposed classes. The modified definitions clarify that Plaintiffs do not seek to include temporary shift supervisors in the proposed classes.

United States District Court
For the Northern District of California

discharge or resignation, as required by California Labor Code §§ 201, 202, and 203.  The subclass is defined as:

> All former shift employees of Defendants Shell Oil Company, Shell Oil Products Company LLC, and/or Equilon Enterprises LLC dba Shell Oil Products US who worked at least one 12-hour shift, excluding any shifts worked as temporary shift supervisors, since April 25, 2004, at the Martinez refinery operated by one or more of the Defendants, and whose employment has been terminated by discharge or resignation.

LEGAL STANDARD

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). Rule 23(a) provides that a case is appropriate for certification as a class action if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Rule 23(b) further provides that a case may be certified as a class action only if one of the following is true:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).  Plaintiffs assert that this case qualifies for class certification under subdivisions (b)(3).

A district court may certify a class only if it determines that the plaintiff has borne its burden of demonstrating that each element of Rule 23 is satisfied.  General Tel. Co. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977).  "[W]hen considering class certification under Rule 23, district courts are not only at

liberty to, but must, perform a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied, and this analysis will often, though not always, require looking behind the pleadings to issues overlapping with the merits of the underlying claims." Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 594 (9th Cir. 2010) (en banc) (certiorari granted). Nevertheless, "district courts may not analyze any portion of the merits of a claim that do not overlap with the Rule 23 requirements." Id.

The court need not accept conclusory or generic allegations regarding the suitability of the litigation for resolution through class action. Burkhalter Travel Agency v. MacFarms Int'l, Inc., 141 F.R.D. 144, 152 (N.D. Cal. 1991). In addition, the court may consider supplemental evidentiary submissions of the parties. In re Methionine Antitrust Litig., 204 F.R.D. 161, 163 (N.D. Cal. 2001); see also Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983) (noting that "some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a)" although "it is improper to advance a decision on the merits at the class certification stage"). Ultimately, it is in the district court's discretion whether a class should be certified. Molski v. Gleich, 318 F.3d 937, 946 (9th Cir. 2003); Burkhalter, 141 F.R.D. at 152.

DISCUSSION

I. Ascertainable Class

"An adequate class definition specifies 'a distinct group of plaintiffs whose members [can] be identified with particularity.'" Campbell v. PricewaterhouseCoopers, LLP, 253 F.R.D. 586, 593 (E.D. Cal. 2008) (quoting Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978). "The identity of class members must be ascertainable by reference to objective criteria." 5 James W. Moore, Moore's Federal Practice, § 23.21[1] (2001). Thus, a class definition is sufficient if the description of the class is "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998).

At the outset, Defendants argue that the proposed classes are ambiguous because the term "shift employee" has a commonly-accepted definition that is contradicted by the proposed class definitions. Defendants assert that a "shift employee" or "shift worker" is one who works on a rotating shift schedule. They claim that, at the refinery, there are no such workers assigned to eight- or ten-hour "shifts" because those schedules are limited to day workers, who do not relieve a departing employee. The class definitions refer to "All current and former shift employees . . . who worked at least one 12-hour shift." Thus, Defendants point out an apparent redundancy in the wording of the

proposed class definitions.  This is not a basis to find the class definitions indefinite.  Plaintiffs discussed the class definition with Shell's counsel, and the parties agreed that the proposed class would be limited to employees who worked twelve-hour shifts. Fang Decl. in Support of Plaintiffs' Opposition to Defendants' Mot. to Dismiss ¶ 9.  Defendants do not dispute that members of the proposed class can be identified from their timekeeping and payroll records.  Accordingly, the Court finds that the class definitions are sufficiently particular and ascertainable.

II.  Rule 23(a) Requirements

     A.  Numerosity

     "The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)).  See also 1 Alba Cone & Herbert B. Newberg, Newberg on Class Actions § 3.3 (4th ed. 2002) (where "the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied").  Plaintiffs contend that there are an estimated 300 to 500 members of the proposed class at the Martinez refinery.  In their Notice of Removal, filed pursuant to the Class Action Fairness Act, Defendants indicated, "From April 24, 2005 to the filing of the Complaint, Defendants had on average approximately 280 potential class members at their Martinez California refinery."  Notice of Removal at ¶ 11.  Courts

have found that joinder is impracticable in cases with as few as forty class members. <u>Ikonen v. Hartz Mountain Corp.</u>, 122 F.R.D. 258, 262 (S.D. Cal. 1998).  Defendants do not dispute, and the Court finds, that Plaintiffs satisfy the numerosity requirement.

B.   Commonality

Rule 23 contains two related commonality provisions.  Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Rule 23(b)(3), in turn, requires that such common questions predominate over individual ones.

The Ninth Circuit has explained that Rule 23(a)(2) does not preclude class certification if fewer than all questions of law or fact are common to the class:

> The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3).  Indeed, Rule 23(a)(2) has been construed permissively.  All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

<u>Hanlon</u>, 150 F.3d at 1019.

Rule 23(b)(3), in contrast, requires not just that some common questions exist, but that those common questions predominate.  In <u>Hanlon</u>, the Ninth Circuit went on to discuss the relationship between Rule 23(a)(2) and Rule 23(b)(3):

> The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.  This analysis presumes that the

United States District Court
For the Northern District of California

existence of common issues of fact or law have
been established pursuant to Rule 23(a)(2);
thus, the presence of commonality alone is not
sufficient to fulfill Rule 23(b)(3).  In
contrast to Rule 23(a)(2), Rule 23(b)(3) focuses
on the relationship between the common and
individual issues.  When common questions
present a significant aspect of the case and
they can be resolved for all members of the
class in a single adjudication, there is clear
justification for handling the dispute on a
representative rather than on an individual
basis.

Id. at 1022 (citations and internal quotation marks omitted).

Plaintiffs contend that there are numerous common questions, including Defendants' obligations to provide a thirty-minute meal period relieved of all duties, pursuant to California Labor Code §§ 226.7 and 512 and IWC Wage Order 1-2001 § 11.  More precisely, the case presents the questions of whether the policies and practices requiring Operators to remain on the refinery premises and in close proximity to their work areas, and to remain in constant communication with co-workers and supervisors via company radio, while barring them from sleeping, reading non-work related materials, watching movies, or using the Internet for more than fifteen minutes per shift, deprive putative class members of thirty-minute meal periods relieved of all duties in accordance with law.

In addition, there exists the question of whether Defendants are liable for penalties under California Labor Code §§ 201 through 203.  Sections 201 and 202 prescribe when an employer must pay an employee's remaining wages earned but unpaid upon the employee's termination or resignation.  Section 203 imposes

penalties for failure to comply with these requirements.  The question of liability for waiting-time penalties, as penalties under Section 203 are often described, turns on whether Defendants were obliged to pay the former employees one hour of premium pay for each shift during which they worked while subject to the policies described above.

Defendants offer only a conclusory argument that Plaintiffs have failed to satisfy the commonality requirement under Rule 23(a)(2).  In their motion to deny class certification, Defendants state, in regards to the challenged requirements and restrictions, "These common questions are not sufficient."  Mot. to Deny Class Cert. at 13.  Defendants appear to challenge the sufficiency of the commonalities, but not their existence.  Defendants' opening brief and reply, as well as their opposition to Plaintiffs' motion for class certification provide no further explanation about why Plaintiffs have failed to satisfy the commonality requirement. Defendants' bare assertions are unpersuasive; Plaintiffs have demonstrated the existence of questions and issues common to the class.

To the extent Defendants intended to defeat a finding of commonality by providing an extensive recitation of the various duties carried out by members of the proposed class, these distinctions are irrelevant because the policies and practices at issue are applicable to all Operators.

United States District Court
For the Northern District of California

C.   Typicality

The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (quoting Schwartz v. Harp, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). Defendants do not contest that named Plaintiffs have claims typical of class members.  The Court finds that Plaintiffs satisfy Rule 23's typicality requirement.

D. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Defendants do not dispute Plaintiffs' assertion that they satisfy the adequacy requirement and the Court finds that they do.

III. Class Certification Under Rule 23(b)

A.   Rule 23(b)(2)

"Claims for money relief may be certified as part of a Rule 23(b)(2) class, but the rule 'does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages.'"  Wang v. Chinese Daily News, Inc., 623 F.3d

13

743, 753 (9th Cir. 2010) (internal quotation marks omitted)
(citing Dukes, 603 F.3d at 615 n.38).

Citing Allison v. Citgo Petroleum Corp., 151 F.3d 402, 412-16
(5th Cir. 1998), Defendants contend that monetary relief in this
case predominates because Plaintiffs seek damages for alleged
unpaid wages and waiting-time penalties.  However, the Ninth
Circuit has expressly rejected the Allison approach to determining
whether monetary relief in a given case disqualifies the class
from certification under Rule 23(b)(2).  In Wang, the Ninth
Circuit explained, "In Dukes, we rejected as 'deficient' . . . the
Allison 'incidental damages standard' that permits certification
of claims for monetary relief under Rule 23(b)(2) only when they
are 'incidental to requested injunctive or declaratory relief,'
because it is unduly restrictive."  623 F.3d at 753-54.  In this
circuit, Rule 23(b)(2) is interpreted to require "only that claims
for monetary relief not predominate over claims for injunctive
relief" and certification is acceptable when the claims are on
"equal footing."  Id. at 754.

Plaintiffs in the present case, like those in Wang, have a
substantial claim for injunctive relief because they seek to end
long-standing employment policies.  Id.  The claims for injunctive
and monetary relief are closely related because back wages are
sought for those who were deprived of lawful meal periods due to
the policies Plaintiffs seek to enjoin.  As a result of this close
relationship, the request for monetary relief does not introduce

United States District Court
For the Northern District of California

"new and significant legal and factual issues," nor raise particular due process or case management concerns.  Id. Furthermore, courts have held that back wages are a form of relief that may be permitted in a Rule 23(b)(2) action.  Dukes, 603 F.3d at 618-19 (holding that back pay in a Title VII case is fully consistent with certification of a Rule 23(b)(2) class action and noting that "every circuit to have addressed the issue has acknowledged that Rule 23(b)(2) does allow for some claims for monetary relief.").  In Dukes, the Ninth Circuit reasoned that back pay in the Title VII context generally involves relatively uncomplicated factual determinations and few individualized issues, and is an integral component of Title VII's "make whole" remedial scheme.  Id. at 619.  Nor are waiting-time penalties so significant or complex that they render Plaintiffs' monetary claim predominant over their request for injunctive relief. Accordingly, class certification under Rule 23(b)(2) is warranted.

B.   Rule 23(b)(3)--Predominance

Defendants challenge the predominance of common questions sufficient to support class certification.  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the

United States District Court
For the Northern District of California

dispute on a representative rather than an individual basis."
Hanlon, 150 F.3d at 1022 (internal quotation marks omitted).  "The
common issues must only predominate; they do not have to be
dispositive of the litigation."  In re Lorazepam & Clorazepate
Antitrust Litig., 202 F.R.D. 12, 29 (D.D.C. 2001).

     To determine whether the predominance requirement is
satisfied, "courts must identify the issues involved in the case
and determine which are subject to 'generalized proof,' and which
must be the subject of individualized proof."  In re Dynamic
Random Access Memory (DRAM) Antitrust Litig., 2006 WL 1530166, at
*6 (N.D. Cal.).

     Plaintiffs assert that they will be able to provide
generalized evidence of the allegedly unlawful meal period
policies and practices at the Martinez refinery with proof of
Defendants' written policies and deposition testimony of
Defendants' representatives.  Plaintiffs further contend that a
class action is a superior method to resolve the dispute because
hundreds of individual claims would exhaust judicial resources and
use time inefficiently.  It is also unlikely that the wage earners
in the putative class would have sufficient incentive to pursue
their claims as individuals.

     Defendants' first argument is that meal period claims are not
susceptible to class treatment under Rule 23(b)(3) because an
employer need only make meal periods available to eligible
employees.  Accordingly, Defendants assert that each claim

16

United States District Court
For the Northern District of California

requires an individualized inquiry to determine whether Defendants thwarted the meal period, or the employee simply chose not to take it.

Defendants, however, do not state the full extent of the protection provided by California Labor Code §§ 512 and 226.7 and IWC Wage Order 1-2001 § 11, and disregard the nature of Plaintiffs' claims.  California Labor Code § 512 generally requires employers to provide employees with meal periods of at least thirty minutes at intervals depending on the number of hours worked in a given day.  Cal. Labor Code § 512(a).  In turn, California Labor Code § 226.7 states that no employer shall require any employee to work during any meal period established by an applicable IWC Wage Order.  Under IWC Wage Order 1-2001 § 11(C), "[u]nless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked."  An "on duty" meal period is permitted when the "nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to."  IWC Wage Order 1-2001 § 11(C).  Section 226.7 also mandates one additional hour of pay at the employee's regular rate of compensation for each work day that a meal period is not provided in accordance with an applicable IWC Wage Order.  Cal. Labor Code § 226.7(b).

17

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Under California's meal period provisions, "[i]t is an employer's obligation to ensure that its employees are free from its control for thirty minutes, not to ensure that employees do any particular thing during that time." Brown v. Federal Express Corp., 249 F.R.D. 580, 585 (C.D. Cal. 2008) (applying Murphy v. Kenneth Cole Productions., Inc., 40 Cal. 4th 1094, 1104 (2007)). Employers are obliged "not to force employees to work through breaks." Id. at 585 (citing Murphy, 40 Cal. 4th at 1104). Accordingly, Plaintiffs claim that Defendants' refinery-wide policies, requiring all Operators to remain on the premises, close to their work stations, to respond to radio calls and alarms throughout their shifts, to remain responsible for assigned units at all times, and to refrain from engaging in common break-time activities, deprived Operators of off-duty thirty-minute meal periods. Essentially, Plaintiffs claim that Defendants have not relinquished sufficient control over Operators during their meal breaks so as to make available an off-duty meal break and, thus, the Operators are entitled to payment of an hour's premium wage for each on-duty meal break. In this respect, the common issues presented by Plaintiffs' claims plainly predominate over any individual issues.

Defendants assert that, as a matter of law, the policies and practices that are the focus of this suit do not deprive Plaintiffs of an off-duty meal break. The Court need not resolve the merits of Plaintiffs' claims based on the present motions.

However, for purposes of class certification, Plaintiffs' claims are adequately supported by law.  In the USW case, on August 27, 2010, Judge Klausner granted summary judgment in favor of the plaintiffs on their meal break claims, which were based on the same restrictions and requirements attacked in this action.  After analyzing Labor Code §§ 226.7 and 512(a), IWC Wage Order 1-2001 § 11, and related case law, the court found that the plaintiffs had established that they were not relieved of all duty during their meal breaks.

Defendants argue that an employee is not "on duty" simply because the employee must remain on the premises.  In support of this proposition, Defendants selectively quote from the website for the California Department of Industrial Labor Relations' Division of Labor Standards Enforcement (DLSE).  The DLSE is the state division charged with enforcing IWC Wage Orders, and the webpage quoted is intended to answer frequently asked questions about the laws and regulations governing meal periods in California.  However the relevant text quoted in full states,

> [Y]our employer can require that you remain on its premises during your meal period, even if you are relieved of all work duties.  However if that occurs, you are being denied your time for your own purposes and in effect remain under the employer's control and thus, the meal period must be paid.[3]

Thus, the DLSE's explanation is contrary to Defendants' position.

---

[3] http://www.dir.ca.gov/dlse/FAQ_MealPeriods.htm (last revised March 7, 2008).

Likewise, Defendants cite <u>Berry v. County of Sonoma</u>, 30 F.3d 1174 (9th Cir. 1994), for the proposition that a meal break is not "on duty" time simply because an employee must carry a radio.  In <u>Berry</u>, county coroners filed suit pursuant to the Fair Labor Standards Act, seeking overtime compensation for time spent waiting on call.  The Ninth Circuit reversed the district court's grant of summary judgment in favor of the plaintiffs.  The Ninth Circuit held that the coroners were not entitled to overtime compensation because their agreements evidenced that they had accepted the County's overtime compensation policy, and they were able to use on-call time effectively for personal pursuits.  The present action, however, is distinguishable from <u>Berry</u> because the Operators' personal pursuits and geographic location are substantially more restricted than those of the coroners waiting on call.

Because the common questions in this case predominate over the individualized issues, and a class action is a superior method of resolving the disputes presented, the Court finds that Rule 23(b)(3) is satisfied.

CONCLUSION

Plaintiffs have met the requirements of Rule 23, and the Court grants their motion for class certification, while denying Defendants' motion to deny class certification.  Docket No. 59 & 57.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

The following class is certified:

All current and former shift employees of Defendants
Shell Oil Company, Shell Oil Products Company LLC,
and/or Equilon Enterprises LLC dba Shell Oil Products
US who worked at least one 12-hour shift, excluding
any shifts worked as temporary shift supervisors,
since April 25, 2004, at the Martinez refinery
operated by one or more of the Defendants.

The following subclass is certified:

All former shift employees of Defendants Shell Oil
Company, Shell Oil Products Company LLC, and/or
Equilon Enterprises LLC dba Shell Oil Products US who
worked at least one 12-hour shift, excluding any
shifts worked as temporary shift supervisors, since
April 25, 2004, at the Martinez refinery operated by
one or more of the Defendants, and whose employment
has been terminated by discharge or resignation.

IT IS SO ORDERED.


Dated: 4/21/2011                    _____
                                    CLAUDIA WILKEN
                                    United States District Judge

21